IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ARRON M. LEWIS,
ADC #151373                                                                                    PLAINTIFF

V.                              CASE NO. 5:15-CV-00254 DPM/BD

JACQUELINE CARSWELL, et al.                                                  DEFENDANTS

### RECOMMENDED DISPOSITION

**I.    Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge D. P. Marshall Jr. Any party may file written objections to this Recommendation. Objections must be specific and must include the factual or legal basis for the objection. To be considered, objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may waive the right to appeal questions of fact.

**II.    Background:**

In this *pro se* § 1983 action, Plaintiff Arron Lewis claims that Defendant Carswell was deliberately indifferent to his medical needs from January 6, 2015, until January 12, 2015.[1]  (Docket entry #2) Mr. Lewis moved for summary judgment. (#86) Defendant Carswell responded to Mr. Lewis's motion and filed a cross-motion for summary

judgment. (#92, #94) Mr. Lewis responded to Defendant Carswell's motion for summary judgment (#104), and the motions are ripe for decision.

## III. Discussion:

Summary judgment is appropriately granted when the evidence presents no genuine dispute as to any fact important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). Although the parties in this case dispute some details about the incident giving rise to the lawsuit, the material facts are not disputed.

According to Mr. Lewis, on January 6, 2015, he reported to the infirmary at the Tucker Max Unit of the Arkansas Department of Correction complaining of right shoulder and right ankle pain after falling in full restraints. (#2) Defendant Carswell, a nurse practitioner, examined Mr. Lewis and told him that his right shoulder was dislocated. (#2, #88 at 8) She unsuccessfully attempted to reduce Mr. Lewis's shoulder dislocation without administering pain medication. (#2) Mr. Lewis told Defendant Carswell that he was in pain, but she sent him back to his cell without pain medication. (#2)

---

[1] All other claims and Defendants have been dismissed from this lawsuit. (#110)

The next day, Mr. Lewis was escorted back to the infirmary where Defendant Carswell wrapped IV bags around his forearms with tape.[2] (#2) After a couple of hours, the shoulder was still dislocated, but Mr. Lewis complained of pain, and the bags were removed. Mr. Lewis was returned to his cell. (#2) At no time during the relevant time period (January 6, 2015, until January 12, 2015) did Defendant Carswell prescribe or administer pain medication in addition to those already prescribed for Mr. Lewis, *i.e.* Tylenol and meloxicam. (#2)

C.  Deliberate Indifference

Mr. Lewis can prevail against Defendant Carswell on his claim of deliberate indifference claim only if the evidence shows that she "actually knew of but deliberately disregarded his serious medical need." *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014). A serious medical need is one that has been "diagnosed by a physician as requiring treatment" or must be "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). To be judged deliberately indifferent, Ms. Carswell's conduct must have been more than negligent, more even than grossly negligent. *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). She must have had "a mental state 'akin to criminal recklessness.'" *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) (quoting *Scott*, 742 F.3d at 340). Stated

---

[2] Presumably, the IV bags were attached to Mr. Lewis's arms so that the weight of the bags would pull his shoulder joint back into place.

another way, Mr. Lewis must show that Defendant Carswell's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir. 1997).

It is undisputed that Mr. Lewis has an extensive history of dislocated shoulders. According to Mr. Lewis, he underwent surgery on his right shoulder sometime between the years 1998 and 2003, while he was incarcerated in the Louisiana Department of Corrections. (#95-6 at 12) He has complained at least nineteen times of right shoulder dislocations in the last four years, including the following dates: December 31, 2011; January 4, 2012; January 5, 2012; January 18, 2012; May 1, 2012; May 6, 2012; July 12, 2012; February 20, 2013; October 1, 2014; October 8, 2014; October 9, 2014; January 3, 2015; January 6, 2015; May 27, 2015; July 1, 2015; July 24, 2015; August 11, 2015; August 18, 2015; and December 1, 2015. (#95-7) In addition to these right-shoulder dislocations, Mr. Lewis has also reported multiple dislocations of his left shoulder. (#95-7 at 8)

According to Mr. Lewis's treatment records, on February 20, 2013, staff at the Grimes Unit observed a self-induced right shoulder dislocation. (#95-1 at 42) Mr. Lewis's medical records from a February 10, 2015 visit to the University of Arkansas for Medical Sciences (UAMS) note that he is "a well-known voluntary dislocator [who was] sent to the ED from clinic for conscious sedation and reduction of a reportedly chronic right shoulder dislocation." (#95-3 at 3) At a follow up appointment at UAMS a few month later, Dr. Ahmadi offered to perform surgery on Mr. Lewis's shoulder; Mr. Lewis,

4

however, elected not to have the surgery and signed a release form to that effect. (#95-6 at 11-16)

On July 1, 2015, Mr. Lewis was taken to the UAMS emergency room for a left shoulder dislocation. Medical staff noted that Mr. Lewis, "[r]eportedly dislocates his shoulders in order to get attention and can relocate and dislocate them by will." (#95-4 at 13)

In December of 2015, Mr. Lewis was evaluated at the Jefferson Regional Medical Center for complaints of a dislocated shoulder. (#95-4 at 78) At that visit, Dr. Pollard, an orthopedic specialist, noted that when Mr. Lewis was relaxed, "the right shoulder clinically is reduced. Once I focused attention on this and he wants to demonstrate that it is dislocated he obviously contracts his pectoralis muscle which gives a clinical appearance of subluxation/dislocation of the right shoulder glenohumeral joint." (*Id.*) Dr. Pollard concluded: "I do not think he requires any surgery for his shoulder. I do not think he even requires reduction under conscious sedation because all that is required is for the patient to quit contracting his pectoralis muscle and his shoulder will be in place. . . . I think he is voluntarily subluxing/disclocating his right shoulder and I don't think he is a candidate for surgical treatment." (*Id.*)

In support of her cross motion for summary judgment, Defendant Carswell attached the affidavit of Dr. Earl Peeples, an orthopedic surgeon who reviewed Mr. Lewis's medical records (including Dr. Pollard's notes), Mr. Lewis's deposition, as well as pleadings and other relevant documents. Dr. Peeples concluded, as follows:

> Mr. Lewis is a medically uncooperative, six time incarcerated inmate, who for the fourth time has attached a lawsuit to an allegation of maltreatment causing a shoulder dislocation. In addition to repeated voluntary shoulder dislocations he admits that he has been diagnosed with anti-social personality disorder and found to be narcissistic. The presence of anti-social personality is important in the analysis of his case and explains much.
> . . .
> Dr. Pollard was correct in that no treatment was appropriate or required as Mr. Lewis is using this voluntary activity to manipulate those around him in the medical system.
> . . .
> The repeated dislocations sustained by Mr. Lewis are a reflection of malingering behavior associated with anti-social personality disorder for the purpose of manipulation.
> . . .
> In this case [Mr. Lewis] alleged that he should have been transported to the hospital for reduction of his shoulder under sedation. However, it is medically proper when dealing with malingering to avoid unnecessary treatment which might endanger the patient. The prison medical staff acted properly.
> . . .
> The medical personnel, recognizing that he is a voluntary dislocator with multiple pervious episodes, did no harm to Mr. Lewis by a routine step-wise evaluation process . . .
> . . .
> The treatment of his right shoulder voluntary dislocations with medication, manipulation, and intravenous drugs is potentially harmful and supports a perversion of the health care delivery system. It allows willful manipulation of the prison medical care system by Mr. Lewis.
>
> I find no fault with any person of the medical staff after the January 2015 voluntary dislocation of interest in this lawsuit.

(#95-7 at 1, 9-13)

Mr. Lewis contends that Defendant Carswell was deliberately indifferent to his medical needs by attempting to reduce his shoulder dislocation without giving him pain medication. But both Dr. Pollard and Dr. Peeples have opined that, because of Mr. Lewis's medical history as a "voluntary dislocator," neither surgery nor emergency room

6

visits are appropriate when he dislocates his shoulders.

Dr. Peeples specifically opined that the treatment Defendant Carswell provided Mr. Lewis was appropriate. *Id.* Both Dr. Peeples and Dr. Pollard are physicians with specialties in orthopedics. Mr. Lewis has not come forward with evidence to contradict these physicians, other than his own statement that he should have been treated at a hospital emergency room.

Mr. Lewis also complains that Defendant Carswell was deliberately indifferent in failing to provide adequate pain medications while she attempted to reduce his dislocated shoulder. Defendant Carswell contends that Mr. Lewis had an active prescription for pain medication. Mr. Lewis does not dispute that he has prescriptions but argues that he did not have "on-person" pain medications and, therefore, did not have immediate access to pain medication. (#105) For purposes of this motion, the Court will assume that Mr. Lewis was denied pain medication from January 6, 2015 to January 12, 2015.

According to his medical records, Mr. Lewis can, and repeatedly does, voluntarily dislocate and reduce dislocations in his shoulders. Dr. Peelpes opined that pain medications are contra-indicated when Mr. Lewis dislocates his shoulders and that no medication should be administered in order to discourage this apparent deliberate misbehavior.

Obviously, Mr. Lewis disagrees with Defendant Carswell's choice of treatment for his shoulder, but his disagreement cannot support a claim for deliberate indifference. Based on Mr. Lewis's medical history and the opinion of two physicians, Defendant

Carswell's treatment of Mr. Lewis's shoulder was medically appropriate and certainly did not amount to deliberate indifferent medical treatment. See *Langford v. Norris*; 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997) (prisoner's disagreement with a prescribed course of treatment is insufficient to establish a deliberate indifference claim.).

### III. Conclusion:

The Court recommends that Mr. Lewis's motion for summary judgment (#86) be DENIED, and that Defendant Carswell's cross motion for summary judgment (#94) be GRANTED. Mr. Lewis's claims should be DISMISSED, with prejudice and the case closed.

DATED this 23rd day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE